IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3176-D

JACOB TREMAIN COVINGTON, )
)
Plaintiff, )
)
v. )          **ORDER**
)
)
DOCTOR HERBEL, )
)
Defendant. )

On November 2, 2009, Jacob Tremain Covington ("Covington" or "plaintiff") filed this

action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S.

388 (1971) [D.E. 1]. At the time of the events alleged in the complaint, plaintiff was under a

criminal indictment in the Middle District of North Carolina charging him with being a felon in

possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and had been sent to

the Federal Medical Center in Butner, North Carolina ("FMC Butner") for psychiatric evaluations.

See United States v. Covington, No. 1:07-CR-191-WO-1 (M.D.N.C.).[1] Dr. Herbel ("defendant" or

"Dr. Herbel") is a psychiatrist employed by the Federal Bureau of Prisons at FMC-Butner.[2]

On November 22, 2010, the court granted in part defendant's motion to dismiss, and

---

[1] On March 27, 2009, the district court presiding over Covington's criminal case found him
not guilty by reason of insanity and committed him to the custody of the Attorney General pursuant
to 18 U.S.C. § 4243. Weinman Decl. [D.E. 38] ¶¶ 7–8. Covington currently resides at the Federal
Transfer Center in Oklahoma City, Oklahoma. See Bureau of Prisons, Inmate Locator,
http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&
IDType=IRN&IDNumber=23380057&x=72&y=14 (last visited Jan. 27, 2012). Covington has not
notified the court of his change of address, as required by local rules. Local Civil Rule 83.3, EDNC.

[2] The the correct spelling of the defendant's last name is Herbel rather than "Herbal." See
Mem. Supp. Mot. Summ. J. 1.

dismissed Covington's request for monetary relief against defendant in his official capacity [D.E. 22]. On June 7, 2011, the court denied defendant's second motion to dismiss and motion to seal [D.E. 32]. On August 8, 2011, defendant filed a motion to dismiss or for summary judgment [D.E. 36], along with supporting declarations and other exhibits [D.E. 38–39]. Because defendant attached materials that are outside the scope of the complaint, the court construes the motion as requesting summary judgment. See Fed. R. Civ. P. 12(d). Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Covington about the motion to dismiss or for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 40]. On August 22, 2011, Covington responded in opposition to the motion [D.E. 41].

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there

2

must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

As noted, at the time of the events alleged in the complaint, Covington was under a criminal indictment filed on May 29, 2007, in the Middle District of North Carolina. Covington, No. 1:07-CR-191-WO-1, [D.E. 3] (M.D.N.C. May 29, 2007). The indictment arose from a May 17, 2007 altercation, during which Covington fired a shotgun at law enforcement officers. Weinman Decl. ¶ 3.[3] On August 4, 2008, the district court committed Covington to the custody of the Attorney General pursuant to 18 U.S.C. § 4241. Zula Decl. [D.E. 39] ¶ 3.[4] On August 15, 2008, FMC Butner staff informed Covington that they had scheduled him for an involuntary medication hearing to be held on August 21, 2008. Id. ¶ 5. The FMC Butner staff member "advised [Covington] of the date, time, place, and purpose of the involuntary medication hearing . . . including the reason for the medication that had been proposed, and of his various hearing rights." Id. & Att. 1 (memorandum & notice of rights). The staff member also informed Covington's criminal defense attorney of the hearing. Zula Decl., Att. 1 (memorandum).

Dr. Zula conducted the hearing pursuant to Washington v. Harper, 494 U.S. 220 (1990). Zula Decl. ¶ 6. When Dr. Zula convened the hearing, she informed Covington of its purpose and "attempt[ed] to take his statement regarding the proposed treatment with psychiatric medication," but Covington responded with a barrage of "insults and obscenities." Id. In determining whether Covington's condition warranted involuntary treatment with psychiatric medication, Dr. Zula reviewed various materials, including the court order authorizing Covington's commitment, medical

---

[3] Paul Weinman is an Assistant United States Attorney for the Middle District of North Carolina, and is the assigned prosecutor in Covington's criminal case. Weinman Decl. ¶ 1.

[4] Dr. Jean Zula is the Chief Psychiatrist at FMC Butner. Zula Decl. ¶ 1.

3

records, a memorandum from Dr. Herbel, Covington's treating psychiatrist, and Dr. Kirkland, Covington's treating psychologist, and statements from Dr. Herbel and Dr. Kirkland regarding potential alternatives to medication. Id. "[B]oth Dr. Kirkland and Dr. Herbel stated that they were not aware of any less intrusive treatments which would be effective in treating Mr. Covington." Id. Dr. Zula's "review of Mr. Covington's records in the community and in the Bureau of Prisons revealed a long, troubled history of [s]chizophrenia, . . . hospitalizations, and assaultive behavior." Id. ¶ 7. "The evidence further revealed that on August 6, 2008, the day Mr. Covington arrived at Butner, he attempted to punch another inmate[,]" and "threatened to kill anyone assigned" to share a cell with him. Id.

"Based on the totality of evidence reviewed, [Dr. Zula] determined that Mr. Covington was, as a result of his mental illness, dangerous to others [because he was] actively engaging, or [was] likely to engage, in conduct . . . intended [to] or reasonably likely to cause physical harm to another or cause significant property damage." Zula Decl. ¶ 8. Therefore, Dr. Zula determined that involuntary treatment with psychiatric medication was warranted. Id. & Att. 2 (written report of findings). Covington alleges that the involuntary treatment with psychiatric drugs violated a court order. Compl. 3. Covington appealed Dr. Zula's determination to the warden of FMC Butner, who denied the appeal on September 3, 2008. Zula Decl. ¶ 11 & Att. 5 (appeal and warden's response). Covington seeks monetary damages for alleged harm resulting from the involuntary treatment and an order prohibiting the future involuntary administration of psychiatric drugs during his confinement in the Bureau of Prisons. Compl. 3.

"[A]n individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" Sell v. United States, 539 U.S. 166, 178 (2003) (citing Harper, 494 U.S. at 221). That interest

4

> may only be overcome by an essential or overriding state interest. When the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense.

United States v. White, 620 F.3d 401, 409 (4th Cir. 2010) (quotations, citations, and alterations omitted). The question is whether Covington was afforded full due process or an emergency justified administering the medicine against Covington's will. See Harper, 494 U.S. at 220, 228; Hogan v. Carter, 85 F.3d 1113, 1117 (4th Cir. 1996); cf. Dancy v. Gee, 51 Fed. App'x 906, 907 (4th Cir. 2002) (per curiam) (unpublished) (affirming summary judgment in section 1983 action when prison personnel had determined that involuntary emergency medication was medically necessary prior to each treatment at issue).

Here, the record demonstrates that Covington was afforded due process before being medicated. He received advance notice of the hearing to determine medical necessity, had a staff representative at the hearing, and was given the opportunity to make a statement on his own behalf. The treatment was ordered only after "a medical finding[] that a mental disorder exist[ed] which [was] likely to cause harm if not treated[,]" was "prescribed by a psychiatrist, and then approved by a reviewing psychiatrist," and was "administered for no purpose other than treatment, and only under the direction of a licensed psychiatrist." Harper, 494 U.S. at 222–23. Thus, Dr. Herbel is entitled to summary judgment.

II.

As explained, the court GRANTS defendant's motion for summary judgment [D.E. 36]. The clerk shall close the case.

SO ORDERED. This **18** day of January 2012.

JAMES C. DEVER III
Chief United States District Judge

5